IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL M. ALLAH,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| DIRECTOR PAT O'CONNER *et al.*,<br>*Defendants* | : | No. 18-4048 |

## MEMORANDUM

PRATTER, J.                                                                 OCTOBER 13th, 2021

### INTRODUCTION

Michael Allah brings claims pursuant to 42 U.S.C. § 1983 against his parole agent, Wayne Hudson, and various employees of Gaudenzia DRC, a privately company that provides outpatient and inpatient substance abuse treatment and mental health services. Mr. Allah alleges that while he was paroled and participating in Gaudenzia DRC's inpatient program, Gaudenzia DRC employees falsely accused him of cocaine use, refused to let him attend medical appointments, denied him access to his prescription pain medication, retaliated against him for filing grievances, and took his personal property without a hearing. Mr. Allah alleges that Mr. Hudson was, at least in part, personally involved in these same deprivations. The Court granted the Gaudenzia defendants' motion to dismiss. Doc. No. 44. However, Mr. Allah's parole agent, Mr. Wayne Hudson, also filed a motion to dismiss, Doc. No. 33, which remained pending awaiting a response from Mr. Allah.

Mr. Hudson moves to dismiss the claims against him under Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief can be granted. After almost two years,

1

Mr. Allah filed a response in opposition to Mr. Hudson's Motion to Dismiss. Doc. No. 62. Mr. Hudson filed his reply shortly thereafter. Doc. No. 66.

For the reasons that follow, the Court grants Mr. Hudson's Motion.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail. . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions").

The Court notes that Mr. Allah's *pro se* pleading should be "liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). That admonition does not demand that the Court ignore or discount reality, however, even given the indulgent nature of the Court's review of *pro se* pleadings. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (internal quotation marks omitted).

## DISCUSSION

In his Motion, Mr. Hudson argues that Mr. Allah has not met the Rule 12(b)(6) standard because he failed to allege that Mr. Hudson had any personal involvement with any alleged deprivation of Mr. Allah's protected rights. In other words, Mr. Hudson asserts that Mr. Allah's complaint does not sufficiently allege that Mr. Hudson ever deprived Mr. Allah of any constitutional right so as to move his complaint from the theoretically possible across the threshold to the factually plausible, as required by Rule 12(b)(6).

Mr. Allah does not directly address Mr. Hudson's arguments. Instead, Mr. Allah's response reiterates the claims about his conditions of confinement at the Gaudenzia facility and against the Gaudenzia employees. As to Mr. Hudson, Mr. Allah notes that "he was detained at his Chester parole Agent[']s office fo[r] a hot urine" and that "he informed his parole agent Mr. Hudson that he go[es] to physical therapy 3 days a week." Doc. No. 62, at 1. In fact, Mr. Allah mentions Mr. Hudson only two additional times in his response. First, Mr. Allah contends that when he received pain and anxiety medication from outside doctors "he was threaten[ed] with being sen[t] back to state prison by Director Pat O'Conner, Supervisor Jane Doe #1 and his parole agent Wayne Hudson." *Id.* at 2. Second, Mr. Allah argues that the Gaudenzia defendants "were in agreement

3

with state parole agent [Hudson]... by way of contract."[1] *Id.* at 3. In other words, Mr. Allah seems to be relitigating his claims against the Gaudenzia employees, claims that the Court already dismissed.

Nevertheless, construing Mr. Allah's response liberally, the Court will take up Mr. Hudson's Motion and Mr. Allah's responses. Because the Court agrees with Mr. Hudson that Mr. Allah's complaint fails to allege that Mr. Hudson had any personal involvement in any alleged constitutional deprivations, Mr. Allah has failed to state a claim sufficient to survive Mr. Hudson's Motion to Dismiss.

"To state a claim under 42 U.S.C. § 1983, 'a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). For purposes of the second requirement, parole agents are state actors. *See Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 551 F.3d 193, 198 (3d Cir. 2008).

In addition, a plaintiff must plausibly allege that the state official had "personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (internal quotation marks omitted). In other words, there is no *respondeat superior* liability under § 1983. *Id.* Instead, a plaintiff must show personal involvement "through allegations of personal direction or of actual knowledge and acquiescence." *Id.* (internal quotation marks omitted).

Here, there is no question that Mr. Hudson, as a parole agent, was an agent of the Commonwealth. Thus, the questions remaining are whether Mr. Allah's complaint sufficiently

---

[1] Here, Mr. Allah seems to be relitigating whether Guadenzia employees are state actors for purposes of the Fourteenth Amendment. However, the Court already addressed and rejected this argument in granting the Guadenzia employees' motion to dismiss. *See* Doc. No. 44, at 4–9. Therefore, the Court will not further address this contention.

4

alleges (1) a violation of Mr. Allah's protected rights and (2) Mr. Hudson's personal involvement with that violation.

Construing Mr. Hudson's complaint liberally, it alleges constitutional violations including denial of medical care, retaliation, unlawful confiscation of property without due process, conspiracy, and a denial of access to the courts.[2] As to Mr. Hudson's personal involvement, Mr. Allah's complaint only twice alleges Mr. Hudson's participation in anything at all, let alone a constitutional deprivation. First, Mr. Allah claims that "[o]n August 1, 2016, my parole agent took me to Gaudenzia inpatient drug treatment program." Doc. No. 2, at 3. Second, Mr. Allah states, "[o]n 10/7/2016, Defendant Agent Wayne Hudson attended a conference with me at the Gaudenzia facility concerning the write up I received for the positive urine where I was told by" Gaudenzia employees "and Agent Hudson that I am not to take my pain or anxiety medication. If so I would be unsuccessfully discharged and taken back to state prison." *Id.*

The Court will take up each episode of Mr. Hudson's alleged involvement in turn. But neither of Mr. Allah's allegations as to Mr. Hudson's personal involvement, even construed under the very liberal pleading standard for *pro se* litigants, alleges any violation of rights, privileges, or immunities secured under the Constitution or federal law that would plausibly state a claim under § 1983.

---

[2] Mr. Allah also appears to allege a violation of the Double Jeopardy Clause of the Fifth Amendment. *See* Doc. No. 2, at 5 ("The I.O.P. staff member extended my I.O.P. because of the 10/7/2016, conference that I was given for the positive urine test. That was double jeopardy, the unit supervisor Jane Doe #1 told the I.O.P. supervisor Kelly Rascoe to extend my time in I.O.P."). This claim fails as a matter of law. "The Double Jeopardy Clause applies to judicial proceedings, not parole." *Priore v. Nelson*, 626 F.2d 211, 217 (2d Cir. 1980); *accord Tillery v. Pa. Bd. of Prob.*, No. 15-cv-4799, 2016 WL 5339711, at *6 (E.D. Pa. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5339669 (E.D. Pa. Sep. 21, 2016); *see also Richardson v. U.S. Parole Comm'n*, 236 F. Supp. 3d 168, 170–71 (D.D.C. 2017) ("Parole proceedings are not criminal prosecutions. Rather, they are the continuation of the original sentence that resulted in parole, and jeopardy therefore does not attach." (internal quotation marks omitted)).

### I. Mr. Hudson's Alleged Transport of Mr. Allah to Gaudenzia Does Not Plausibly State Any Constitutional Violation

Mr. Allah first alleges that Mr. Hudson took him to the Gaudenzia drug treatment center. Even construed liberally, Mr. Allah does not suggest any theory under which Mr. Hudson's transport of Mr. Allah to the Gaudenzia drug treatment center violated any rights, privileges, or immunities secured under the Constitution or federal law. For example, Mr. Allah does not allege any facts suggesting that anything untoward took place during that ride. As a point of contrast, this Court found that an incarcerated plaintiff had stated a plausible deliberate indifference claim after a prison official allegedly declined to take the plaintiff to a hospital in order to cover up the fact that the prison official had been in a vehicle accident while transporting the plaintiff and in which the plaintiff was injured. *See Brown v. Lewis*, 865 F. Supp. 2d 642, 647–48 (E.D. Pa. 2011). Mr. Allah has not alleged anything of the sort here. As a result, his first allegation against Mr. Hudson fails to plausibly state any cognizable claim under § 1983.

### II. Mr. Hudson's Alleged Participation in the October 17, 2016 Meeting Does Not Plausibly State Any Constitutional Violation

Next, Mr. Allah alleges that Mr. Hudson, along with other Gaudenzia employees, informed Mr. Allah that his parole would be revoked and he would be returned to state prison if he continued to take outside pain and anxiety medications while in drug treatment. Mr. Allah claims that this led to severe pain and suffering. But again, Mr. Allah does not allege any theory under which Mr. Hudson's actions amounted to a violation of his protected rights. Construing Mr. Allah's complaint very liberally, he may be making a claim for denial of medical care, sometimes called deliberate indifference to serious medical needs, under the Eighth Amendment. But even under this theory, Mr. Allah's allegation against Mr. Hudson falls short.

A plaintiff may make a constitutional claim for denial of medical care or deliberate indifference in a few different scenarios. First, a pretrial detainee may make such a claim under the Fourteenth Amendment. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003). Second, a plaintiff who has been convicted and is or was incarcerated during the alleged deprivation may make such a claim under the Eighth Amendment. *Id.*

It is also theoretically possible that a plaintiff who has been released on parole may make a claim for denial of medical care or deliberate indifference under the Eighth Amendment similar to an incarcerated individual. *See, e.g., Luna v. Weiner*, No. 05-cv-2298, 2006 WL 2570837, at *4 (D.N.J. Sep. 5, 2006). However, the rationale underlying a deliberate indifference claim for pretrial detainees or incarcerated individuals does not easily fit into the parole context. While detained pretrial or incarcerated, the "State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself"; however, a person on parole is not subject to this same degree of restraint. *Deshaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 200 (1989). Nevertheless, the Supreme Court has held that "parolees are on the 'continuum' of state-imposed imposed punishment," *Samson v. California*, 547 U.S. 843, 850 (2006), and that "parole is an established variation on imprisonment of convicted criminals," *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972), which may suggest such claims are potentially cognizable.

The Third Circuit Court of Appeals has not ruled definitively on this issue. District courts within the Third Circuit have accepted without specifically deciding or analyzing the legal issue that a parolee's claim under the Eighth Amendment is legally cognizable. *See, e.g., Giddings v. Joseph Coleman Ctr.*, 473 F. Supp. 2d 617, 623–24 (E.D. Pa. 2007) (analyzing claim that parole agent failed to prevent parolee's self-harm under Eighth Amendment); *Short v. Webb*, No. 18-cv-

4130, 2019 WL 4573254, at *5 (E.D. Pa. Sep. 20, 2019) (analyzing Eighth Amendment deliberate indifference claim that parole agent failed to seek medical care after causing parolee's injuries during arrest for parole violation); *Gelbutis v. Shenandoah Police Dep't*, No. 17-cv-1057, 2018 WL 4214413, at *5 (M.D. Pa. Aug. 6, 2018) (similar); *Knauss v. Anthony*, No. 07-cv-2935, 2008 WL 382226, at *2–3 (E.D. Pa. Aug. 14, 2008) (analyzing Eighth Amendment deliberate indifference claim that parole agent failed to seek medical care for drug overdose during parolee's arrest).

Other circuits, however, have considered expressly this question. For example, the Seventh Circuit explicitly noted that "We have not yet addressed whether parole officers can be liable for deliberate indifference to a parolee's serious medical need. . . ." *Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018). The Seventh Circuit went on to consider situations in which parole officers might be liable under the Eighth Amendment and concluded that parole officers "at least may be constitutionally obligated not to block a parolee who is trying to arrange such care for herself without any basis in the conditions of parole." *Id.* (quoting *Estelle*, 429 U.S. at 104–05). While this legal issue remains unresolved, for the purposes of resolving Mr. Hudson's Motion to Dismiss, the Court will assume that a parolee may make a claim for deliberate indifference under the Eighth Amendment.

As to the standard under which such a claim is analyzed, the Third Circuit Court of Appeals reviews claims by both pretrial detainees making a claim under the Fourteenth Amendment and incarcerated individuals making a claim under the Eighth Amendment under the same deliberate indifference standard. *Natale*, 318 F.3d at 582; *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner."). For a person on parole

making an Eighth Amendment claim, it is possible that the plaintiff's burden of proof may be higher.[3] The Court does not need to address that question here, however, because Mr. Allah's claim against Mr. Hudson fails even under the lower deliberate indifference standard.

The deliberate indifference standard involves both an objective and a subjective component: there must be objective evidence that the plaintiff had a serious need for medical care and evidence that the official subjectively knew of and disregarded the risk to that plaintiff's health. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). As to the subjective component, the Supreme Court has adopted the criminal recklessness standard. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). The Court addresses each component in turn.

### A. Mr. Allah Has Not Alleged Any Serious Need for Medical Care

Mr. Allah's claim fails under the first prong of the deliberate indifferent standard. Under this first prong, the objective showing of medical need, the medical "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

---

[3] At least one court has suggested that a plaintiff on parole making a claim under the Eighth Amendment must allege a claim under the higher "shocks the conscience" standard. *Luna*, 2006 WL 2570837, at *5. The Court in that case reasoned this is because a person on parole is not incapacitated nor prevented from "exercis[ing] ordinary responsibility for his own welfare" like persons detained awaiting trial or incarcerated after being found guilty. *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)). However, the "shocks the conscience" standard is derived from substantive due process jurisprudence and the claims at issue in *Lewis* involved claims stemming from an attempted seizure before arrest, not a person on parole. *See Lewis*, 523 U.S. at 845–50. In light of the Court's resolution under the lower deliberate indifference standard, the Court has no occasion to decide what the proper standard is for a parolee alleging an Eighth Amendment claim, assuming such a claim is legally cognizable.

Here, construing Mr. Allah's complaint liberally, he is perhaps alleging that Mr. Hudson's and the other Gaudenzia employees' denial of his pain and anxiety medication constituted a "serious risk" to his health because such a denial would cause so much pain that it would be "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Colburn*, 946 F.2d at 1023 (internal quotation mark omitted). Mr. Allah's complaint runs into two serious roadblocks at this juncture, however. First, the denial of his pain and anxiety medication took place while he was at Gaudenzia as part of his treatment. *See* Doc. No. 2, at 3. In other words, Mr. Allah does not allege that Mr. Hudson denied him any treatment. *Cf. Mitchell*, 895 F.3d at 502 (concluding that parole officers may "at least may be constitutionally obligated not to block a parolee who is trying to arrange such care for herself without any basis in the conditions of parole."). Instead, Mr. Allah's claim seems to be that his treatment at Gaudenzia was deficient. But Mr. Allah does not allege that Mr. Hudson was involved in developing the treatment plan, administering his treatment at Gaudenzia, or had any involvement in the treatment whatsoever other than attending the October 7, 2016 meeting. Mr. Hudson's attendance at this meeting by itself is insufficient to plausibly allege that Mr. Hudson was deliberately indifferent to his need for pain and anxiety medication.

B. Mr. Allah Has Not Alleged Mr. Hudson Acted With Subjective Deliberate Indifference

Mr. Allah's claim also fails under the second prong of the deliberate indifference standard. Under prong two, a defendant acts with deliberate indifference if he knows of and disregards "an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In other words, a defendant must have acted with

"obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). This is the same as the criminal recklessness standard. *Farmer*, 511 U.S. at 839–40.

Mr. Allah's complaint does not allege that Mr. Hudson acted with the requisite state of mind to constitute a constitutional violation for deliberate indifference. He only alleges that Mr. Hudson was present at the meeting where Mr. Allah was informed that he was required to stop taking his pain and anxiety medication and that Mr. Hudson also informed Mr. Allah he needed to stop taking the outside-prescribed medication. Doc. No. 2, at 3. Mr. Allah's complaint does not allege that Mr. Hudson acted recklessly with "obduracy and wantonness." As a result, Mr. Allah's complaint also separately and independently fails under prong two of the deliberate indifference standard.[4]

Even construing Mr. Allah's *pro se* complaint liberally, *Estelle*, 429 U.S. at 106, he has failed to plausibly allege that Mr. Hudson had personal involvement in any alleged wrongdoing or deprivation of any protected rights. As a result, the Court grants Mr. Hudson's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

---

[4] Because Mr. Allah's claim fails under the less stringent deliberate indifference standard, the Court assumes without deciding that his claim would certainly fail under the more rigorous "shocks the conscience" standard, if that standard is indeed the proper standard under which to analyze a parolee's Eighth Amendment claim. *See Luna*, 2006 WL 2570837, at *5.

11

## Conclusion

For the foregoing reasons, the Court grants the motion to dismiss. An appropriate order follows.

BY THE COURT:

_____

GENE E.K. PRATTER

UNITED STATES DISTRICT JUDGE